UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CIANBRO CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-cv-10535 |
| MUESER RUTLEDGE CONSULTING ENGINEERS PLLC and LAMSON ENGINEERING CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                      **December 9, 2024**

## I.   Introduction

Plaintiff Cianbro Corporation ("Cianbro") has filed this lawsuit against Defendants Mueser Rutledge Consulting Engineers, PLLC ("MRCE") and Lamson Engineering Corporation ("Lamson") (collectively, "Defendants") alleging breach of contract (Counts I and III) and equitable indemnification (Counts II and IV). D. 1. Both MRCE and Lamson now have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 10; D. 19. For the reasons stated below, the Court ALLOWS the motions to dismiss as to the equitable indemnification claims, but DENIES them as to the breach of contract claims. D. 10; D. 19.

## II.   Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

1

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III.  Factual Background

The following facts are drawn from Cianbro's complaint, D. 1, and are accepted as true for the purposes of resolving Defendants' motion to dismiss.

#### A.  The Project and the Contracts

The Merrimack River Bridge in Haverhill, Massachusetts (the "Bridge"), was built more than 125 years ago and carries commercial and passenger railroad traffic over the Merrimack River. D. 1 ¶ 11. The Bridge is supported by north and south abutments on either side and four in-water piers between the abutments. Id.

In or about 2014, the Massachusetts Bay Transportation Authority (the "MBTA") solicited requests for qualifications from design-builders for a project involving the rehabilitation and protection of the in-water parts of the Bridge while the Bridge remained in use for rail traffic. ("The Project"). Id. ¶¶ 12–13. The Project consisted of the design and construction of "scour countermeasures" to protect the Bridge's abutments and piers from future scour (or erosion) events as well as some masonry repointing of these structures below the mean high-water mark. Id. ¶ 12.

To submit their qualifications to the MBTA for the Project, Cianbro began working with a design team which was comprised of Louis Berger Group, Inc. ("LB"), now WSP USA, Inc. ("WSP") after the latter purchased LB in 2018, see D. 19-1 at 17,[1] and Defendants that served as WSP's geotechnical subconsultants.  D. 1 ¶ 14.

After the MBTA issued a Request for Proposal ("RFP") in or about April 14, 2014 to formally solicit design-builders for the Project, Cianbro relied upon the design team, including the Defendants, to, *inter alia*, "determine how to meet the MBTA's scour criteria, prepare a technical proposal for Cianbro to bid the Project, develop the design and construction documents based on that technical proposal, and provide construction phase services."  Id. ¶ 16.

With the design and calculations prepared by Defendants, Cianbro submitted the technical proposal to MBTA on or about July 30, 2015.  Id. ¶ 17.  The technical proposal was based upon an "alternative technical concept" (the "ATC") developed by the design team, in which MRCE was responsible for the grouting design and Lamson was responsible for the steel sheet pile design.  Id. ¶ 18.  The ATC called for "the installation of protective secant pile walls at the abutments and a combination of sheet pile containment walls surrounding the piers and permeation grouting to create a grouted soil mass ("GSM") within the footprint of those sheet pile walls."  Id.  The ATC "was labeled 'alternative' because it differed from the approaches laid out in the MBTA's base technical concept (the "BTC") which were part of the Project's RFP."  Id.

Lamson and WSP entered into a written subcontract for professional services on June 30, 2015 and August 28, 2015.  Id. ¶ 20.  MRCE entered into a written subcontract with WSP on August 28, 2015.  Id. ¶ 21.

---

[1] Accordingly, the Court will refer to WSP throughout this Memorandum and Order in the place of LB.

WSP and Cianbro entered into a written contract on August 28, 2015. Id. ¶ 22. WSP and Cianbro later entered into a modified agreement on December 7, 2015, which superseded and replaced the August 28, 2015 contract. Id.

In or about September 2015, the MBTA awarded the Project to Cianbro. Id. ¶ 23. In or about October 21, 2015, Cianbro and the MBTA formally entered into a contract for the Project "for a contract lump sum amount of $28,270,000 based on the ATC prepared with the geotechnical designs from Defendants." Id. ¶ 24.

### B.     The Alleged Design Issues

As alleged, there were issues with the design that resulted in Cianbro incurring substantial additional costs "with the total approaching 60% of the lump-sum contract price in the MBTA contract." Id. ¶ 25.

Cianbro alleges that the first, major design error concerns the pier protection for which MRCE was responsible. Id. ¶¶ 18, 26. As alleged, given the known geotechnical conditions of the Project, reasonable geotechnical engineers would not have chosen this particular design, "which relied on the effectiveness of permeation grout to create the required GSM and the adequacy of the sheet piles' load-bearing capacity." Id. ¶ 26.

The second, major design error concerned the placement of sheet piles for which Lamson was responsible. Id. ¶ 18, 34. As alleged, the ATC sheet pile design called for driving sheets "so close to the piers that it caused the soil under the piers to densify and the piers, in particular Pier 3, to settle into sediment." Id. ¶ 35.

The MBTA advised Cianbro that its design proposal did not satisfy MBTA's technical criteria and the MBTA would not accept the Project work as designed. Id. ¶ 29. As a result, WSP had to develop new designs for the piers to address Defendants' alleged defective designs, id. ¶

4

32, and Cianbro was forced to perform substantial extra, remedial work as well as absorb the cost of delay impacts.  Id. ¶¶ 33, 36.  After Cianbro completed this remedial work, the Project was complete and approved by the MBTA.  Id. ¶ 36.

### C. Cianbro's Settlement with WSP and Assignment of Claims

Cianbro asserted design claims against WSP, which in turn asserted claims against Defendants for, among other things, breach of the subcontracts, negligence and indemnification. Id. ¶ 38.

On December 14, 2023, Cianbro and WSP reached a settlement that included but was not limited to establishing Cianbro's entitlement amount for its claims, providing a confidential payment amount by WSP of a portion of the damages allegedly caused by Defendants and assigning the rights necessary for Cianbro to obtain from Defendants directly all damages that either entity caused to WSP and/or Cianbro up to the entitlement amount.  Id. ¶ 39.

## IV. Procedural History

Cianbro filed this action on March 1, 2024, D. 1.  Defendants have now moved to dismiss the complaint.  D. 10; D. 19.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 37.

## V. Discussion

### A. Breach of Contract

In Counts I and III, Cianbro alleges that Defendants have breached the subcontracts by refusing to indemnify WSP and Cianbro as required by the subcontract's indemnification provisions.  D. 1 ¶¶ 44(c), 56(c).[2]  Pursuant to the indemnification provisions, Defendants "shall

---

[2] The complaint appears to suggest Cianbro's breach of contract claim includes two subclaims – breach of performance standard and breach of contractual indemnification.  See D. 1 ¶¶ 44(a)–(c); 56 (a)–(c).  In its oppositions to Defendants' motions to dismiss and at the motion hearing, Cianbro

5

hold harmless and indemnify [Cianbro], [WSP] and its officers, directors, and employees from and against all losses, claims, causes of action, liabilities, and damages, costs and expenses…arising out of the negligent acts, errors, or omission, or the negligence or willful misconduct" of Defendants. D. 10-1 ¶ 4.1.1; D. 19-2 ¶ 4.1.1. Defendants argue that Cianbro's action should be dismissed as time-barred by the three-year statute of limitation under in Mass. Gen. L. c. 260, § 2B ("Section 2B"). D. 11 at 5; D. 19-1 at 6.

Under Section 2B, "[a]ctions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years after the cause of action accrues." Mass. Gen. L. c. 260, § 2B.[3] While Section 2B applies only to tort actions, "[a] plaintiff may not . . . escape the consequence of [Section 2B] . . . on tort actions merely by labelling the claim as contractual." Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 823 (1986). To determine whether an action is one in tort or contract, "[t]he court must look to the 'gist of the action.'" Id. (citing Hendrickson v. Sears, 365 Mass. 83, 85 (1974)). Defendants, relying on this holding, argue that because the indemnification provisions in the subcontracts only indemnify claims arising out of Defendants' negligence, the "gist" of Cianbro's breach of contract claim is negligence. See D. 11 at 10–11; D. 19-1 at 9–11.

---

clarified that it pressing only raising two claims – breach of contractual indemnification under Counts I and III and equitable indemnification under Counts II and IV. D. 17 at 1–2; D. 30 at 7.

[3] The subcontracts' choice-of-law provisions require disputes to be adjudicated under New Jersey law, Defendants argue that the Court should apply Massachusetts law instead. D. 11 at 15; D. 19-1 at 13. Cianbro contends that the result is the same under Massachusetts law and the Court need not resolve the issue. D. 17 at 8 n. 3; D. 30 at 8 n.4. Since the parties analyze the claims under Massachusetts law, the Court does as well here.

Anthony's Pier Four, Inc., however, is inapplicable here. First, the case did not involve a claim for breach of contractual indemnification. See Anthony, 396 Mass. at 819 (nothing that the complaint "alleges negligent design and construction, breach of implied warranties, and breach of express warranties"). Second, as the Supreme Judicial Court clarified in Gomes v. Pan Am. Assocs., a breach of contractual indemnification claim is "essentially contractual." Gomes v. Pan Am. Assocs., 406 Mass. 647, 648 (1990). As such, Section 2B "does not apply to claims for contractual indemnification." Lennar Ne. Properties, Inc. v. Barton Partners Architects Planners Inc., No. 16-CV-12330-ADB, 2021 WL 1195629, at *3 (D. Mass. Mar. 30, 2021) (citing Gomes, 406 Mass. at 648); see Gomes, 406 Mass. at 648. Here, Cianbro raises a claim for breach of contractual indemnification based on an indemnification agreement set out in both subcontracts. D. 10-1 ¶ 4.1.1; D. 19-2 ¶ 4.1.1. Accordingly, Cianbro's breach of contractual indemnification claim is a contractual claim and Section 2B does not apply here.

Because Cianbro's breach of contractual indemnification claim is a contractual claim, it is governed by the six-year statute of limitations for breach of contract claims. Mass. Gen. L. c. 260, § 2. A breach of contractual indemnification claim begins to accrue when a breach has occurred. Fall River Hous. Auth. v. H.V. Collins Co., 414 Mass. 10, 13 (1992) (citing Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 130 (1956)) (explaining that "a claim for indemnity accrues when there is a breach of that provision"). "A breach of an indemnity agreement only occurs when the indemnitor pays damages to the injured [party]." Griffin v. CSX Transportation, Inc., No. 06-CV-11309-RCL, 2008 WL 11388714, at *2 (D. Mass. Sept. 29, 2008) (citing Fall River, 414 Mass. at 13). Here, the breach occurred (and the claim began to accrue) in December 2023, when WSP entered into the settlement agreement with Cianbro and paid a portion of the

damages.[4]  D. 1 ¶ 39.   Accordingly, Cianbro's contractual indemnification claim is not time-barred.  The Court denies Defendant's motions to dismiss as to Counts I and III.

      **B.**    **Equitable Indemnification**

In Counts II and IV, Cianbro argues that Defendants are liable "as a matter of equity" for all "damages or liabilities imposed on WSP by Cianbro." D. 1 ¶¶ 50, 62. Here, Defendants also argue that this claim is time-barred under Section 2B. D. 11 at 12; D. 19-1 at 11. A common law equitable indemnification claim is a tort claim, see Zoll Med. Corp. v. Barracuda Networks, Inc., 585 F. Supp. 3d 128, 139 (D. Mass. 2022) (citing Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Auth., 693 F.2d 1, 2 (1st Cir. 1982)) (referring to equitable indemnification as a "tort-based right"), and, therefore, Section 2B applies here.

Because Cianbro's equitable indemnification claim is an action in tort, accrual begins at the time of injury (which would be "at the time of the allegedly defective [design]") or, if under the discovery rule, when a plaintiff "discovers, or reasonably should have discovered, the injury stemming from the defendant's conduct." Solfisburg v. Glenco, Inc., No. 18-cv-10266-IT, 2022 WL 20086812, at *6 (D. Mass. Feb. 2, 2022) (citing Riley v. Presnell, 409 Mass. 239, 244 (1991)). Even as alleged here, the allegedly defective design and/or the discovery of Cianbro's injury of same came at or about the time that the MBTA communicated to Cianbro that the design did not

---

[4] In its reply, Lamson also argues that the Court should dismiss the complaint because Cianbro failed to disclose the settlement agreement in either the complaint or opposition to the motions to dismiss. D. 36 at 5–6. Lamson asserts that Cianbro is obligated to disclose this document because Cianbro's "allegations depend on the existence of and provisions contained in" the settlement agreement. Id. at 6. At the motion to dismiss stage, however, a "complaint need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief'" that gives "the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (internal citations omitted). The complaint here meets this low bar and, accordingly, the Court will not dismiss the complaint on this ground.

meet MBTA's criteria. D. 1 ¶ 29.[5] Although the complaint does not specify a date for this event, it allegedly appears to have occurred shortly after November 13, 2019 when the design team notified Cianbro that the "design intent has been achieved." D. 1 ¶ 28. Even if that occurred sometime in 2020, these two tort claims, asserted in the complaint filed here on March 1, 2024, would be time-barred under the three-year statute of limitations in Section 2B. Mass. Gen. L. c. 260 § 2B. Accordingly, the Court allows the Defendants' motions to dismiss as to Counts II and IV.

## VI.   Conclusion

For the foregoing reasons, the Court DENIES the motions to dismiss as to Counts I and III (breach of contract claims) and ALLOWS the motions to dismiss as to Counts II and IV (equitable indemnification claims). D. 10; D. 19.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[5] Defendants, citing emails in which Cianbro and WSP allegedly negotiated a Standstill and Tolling Agreement ("Tolling Agreement"), assert that the action began accruing at least by on or about March 16, 2020. D. 11 at 13; D. 19-1 at 12; D. 10-2 to 10-5; D. 19-3. "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Exceptions are made for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. Here, neither the Tolling Agreement nor the email chains are attached to the complaint, nor are they expressly incorporated in the complaint or documents "the authenticity of which are not disputed," id., particularly as Cianbro disputes the completeness of the exhibits and their import. D. 17 at 11-12. Accordingly, the Court has not relied upon these documents in the resolution of the motions.